[Civ. No. 19390.   Second Dist., Div. Two.   Mar. 16, 1953.]

A. VICTOR ROSENFELD et al., Appellants, v. MAX
ZIMMER et al., Respondents.

Fred Horowitz and Alvin F. Howard for Appellants.

Mitchell, Silberberg & Knupp and Arthur Groman for Respondents.

McCOMB, J.—From a judgment in favor of defendant after trial before the court without a jury in a stockholders' derivative action, plaintiffs appeal.

Viewing the evidence in the light most favorable to defendants (respondents) and pursuant to the rules set forth in *Estate of Isenberg,* 63 Cal.App.2d 214, 216 [146 P.2d 424], the essential facts are:

Defendant Zimmer had an option to buy a parcel of real property in the city of Pasadena. This option was turned over to defendant Euclid Properties, Inc. (hereinafter called Euclid) at a valuation of $120,000. One hundred shares of stock of Euclid were issued. Plaintiffs Victor and Morris Rosenfeld bought 33 1/3 shares at $10 a share. Mrs. Coren bought 16 2/3 shares for $166.66. Plaintiffs Rosenfeld loaned Euclid $60,000, Mrs. Coren loaned the corporation $30,000 and defendant Max Zimmer loaned it $30,000. Defendant Nathan Krems secured two long-term leases for a drugstore and market building to be erected on the property.

In order to secure a loan from the Massachusetts Mutual Life Insurance Company to finance the erection of the building to be constructed for Euclid by defendant Zimmer Construction Company, Euclid entered into a written contract with defendant Zimmer Construction Company to pay the latter $300,000 for the construction of the building. At the same time defendant Zimmer Construction Company, through defendant Zimmer, orally agreed to erect the building for Euclid at a price of cost plus 10 per cent. It was understood between plaintiffs and defendants that the difference between the price which Euclid agreed to pay Zimmer Construction Company for the erection of the building and the $300,000 which defendant Euclid received through its loan from the insurance company was to be used to pay off the loans which plaintiffs Rosenfeld and Mrs. Coren had made to defendant Euclid.

The aforementioned written contract was submitted to the Massachusetts Mutual Life Insurance Company in connection with defendant Euclid's application for a loan of $300,000 which the life insurance company made to it. The building was erected and defendant Euclid paid to the Zimmer Construction Company in accordance with the terms of the written contract $300,000 for the erection of the building which actually cost not in excess of $160,000. Plaintiffs instituted the present stockholders' derivative suit to recover the differ-

ence between the cost of the building and $300,000 which had been paid to defendant Euclid.

The trial court found that plaintiffs' cause of action was barred by the doctrine of unclean hands of plaintiffs and defendant Euclid, the corporation on whose behalf plaintiffs instituted the present action.

This is the sole question necessary for us to determine:

*Was there substantial evidence to sustain the trial court's finding that plaintiffs' cause of action was barred by the doctrine of unclean hands?*

This question must be answered in the affirmative. Plaintiffs' own witnesses testified to each of the material facts set forth above which, together with the pleading in their amended complaint, constitutes substantial evidence to sustain the above stated facts.*

---

*The amended complaint alleges:

''(b) During the month of April, 1949, Euclid decided to erect a market, drug store, and parking lot on a portion of the above described real property. Defendant Max Zimmer orally stated and represented to Euclid and to its other shareholders, officers and directors, that it would be to the best interest of the corporation and its shareholders to have him, through Zimmer Construction Company, erect the aforesaid improvements on said property because his skill and experience were such that he could do the work at a smaller cost than any other contractor, that he would charge the corporation not more than his actual cost, plus 10% thereof, and that he would get competitive bids from responsible contractors, and, in no event, would he charge more than the amount of the lowest contractor's bid, but that before Euclid could undertake the work of constructing said improvements, it was necessary for it to obtain a loan to be secured by the property upon which the improvements would be constructed.

''That during the month of June, 1949, defendant Max Zimmer orally promised and represented to Euclid and to its other officers that in order to secure a loan from the Massachusetts Mutual Life Insurance Company, it was necessary to assure said company that the erection of said improvements would cost a certain sum and that such assurance must be made to said company by displaying to it a written contract whereby Zimmer Construction Company agreed to erect said improvements for a certain sum, and it would also be necessary to deliver to said company a certified copy of a resolution of Euclid authorizing the making of said written contract. Said defendants, Max Zimmer and Zimmer Construction Company, further promised and agreed that said written contract would not affect or create any rights as between the parties thereto nor would it in any way affect the aforesaid promises and representations of defendant Max Zimmer that the maximum cost to Euclid of said improvements would be the actual cost, plus ten per cent. thereof; that in reliance on said promises and representations, a written instrument was signed on June 22, 1949, by Euclid, calling for the construction of said improvements by Zimmer Construction Company for the sum of $335,000.

''That on or about September 22, 1949, said defendant Max Zimmer orally represented to the Secretary of Euclid, one Morris G. Coren, that it would be advisable to reduce the apparent contract price shown in said

Hence the following rules are here applicable:

■ (1) A stockholders' derivative suit is an equitable action. (*Nessbit* v. *Superior Court*, 214 Cal. 1, 8 [3 P.2d 558]; *Bell* v. *Bayly Bros.*, 53 Cal.App.2d 149, 155 [127 P.2d 662].)

■ (2) It is the duty of a trial court upon the discovery that a transaction is tainted with fraud or lack of good faith to inquire into the facts in regard thereto. (*Howe* v. *Brock*, 86 Cal.App.2d 271, 276 [194 P.2d 762].)

■ (3) The doctrine of unclean hands is applicable in a stockholders' derivative action. (*DeGarmo* v. *Goldman*, 19 Cal.2d 755, 764 [123 P.2d 1].)

■ (4) A court of equity will not assist a party to a fraudulent scheme to secure the objective of such plan. (*Primeau* v. *Granfield*, 193 F. 911, 912 [114 C.C.A. 549].)

■ (5) A corporation is the real party in interest in a stockholders' derivative action and the cause of action is the corporation's and if the corporation is not in a position to attack a transaction, the plaintiff stockholders may not maintain the suit. (*Difani* v. *Riverside County Oil Co.*, 201 Cal. 210, 216 [7] [256 P. 210]; *Reid* v. *Robinson*, 64 Cal.App. 46, 55 [4] [220 P. 676].)

■ (6) Where it appears that plaintiff has intended to defraud another a court of equity will apply the doctrine of unclean hands, and leave the plaintiff in the position in which he is situated when he seeks the assistance of the court.

written instrument from $335,000.00 to $300,000.00, the amount of the loan which the Massachusetts Mutual Life Insurance Company was making, and, in reliance upon the aforesaid representations and promises, on or about said date a written instrument was signed by Euclid and Zimmer Construction Company, calling for the construction of said improvements for the sum of $300,000.00.

"That but for said representations and promises, Euclid would not have executed either of the aforesaid written instruments dated, respectively, June 22, 1949 and September 22, 1949.

"In further reliance upon said promises and representations, Euclid allowed said defendant, Max Zimmer through defendant, Zimmer Construction Company, to proceed with the erection of said improvements. Said defendant failed and neglected to secure competitive bids as aforesaid. Said defendant caused the erection of said improvements at a cost not in excess of the sum of $160,000.00, the exact amount being unknown to plaintiffs, but known to said defendant, but concealed this fact from Euclid and its shareholders, and represented to Euclid and its shareholders and directors that the cost of the said improvements, plus 10% thereof, was $307,764.25. Said defendant procured Euclid to pay to him, and for his account, said sum as reimbursement for the cost of erecting said improvements, plus 10%. Defendant's aforesaid representations and concealment of the actual cost of erection of said improvements were done with the purpose and intent of securing for himself a secret profit, at the expense of Euclid, in the sum of $147,000.00."

(*Belling* v. *Croter*, 57 Cal.App.2d 296, 306 [134 P.2d 532] ; *Babu* v. *Petersen*, 4 Cal.2d 276, 288 [48 P.2d 689] ; *Mitchell* v. *Cline*, 84 Cal. 409, 415 [24 P. 164].)

Applying the foregoing rules to the facts of the present case we find that under rule (1) the present action is in equity, and that under rule (2) it was the duty of the trial court upon the discovery that the action was tainted with fraud and lack of good faith to make an inquiry into the subject, which it did. Since the evidence disclosed that plaintiffs and defendant Euclid had intended to and actually did misrepresent the facts to the Massachusetts Mutual Life Insurance Company in obtaining a loan from it, by which they hoped to benefit, they came into a court of equity with unclean hands. Therefore under rules (3), (4), (5) and (6), *supra,* the trial court properly held that plaintiffs' cause of action was barred.

In view of our conclusions it is unnecessary to discuss other points argued by counsel in their briefs.

Affirmed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied April 2, 1953, and appellants' petition for a hearing by the Supreme Court was denied May 14, 1953. Carter, J., was of the opinion that the petition should be granted.