Harry LEWIS, Plaintiff,

v.

Charles A. ANDERSON, Ralph E. Bailey, Howard W. Blauvelt, Theodore F. Brophy, Charles W. Buek, William H. Donaldson, Nancy Hanks, W.A. Hewitt, Robert P. Jensen, J.E. Kircher, Dean Robert McKay, M.B. Morris, Frank Pace, Jr., W. Dewey Presley, James E. Robison, R.L. Adams, R.W. Gerwig, A.K. McColpin, J.D. Morrow, C.S. Nicandros, R.E. Samples, S. Schwartz and Conoco Inc., Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted: Aug. 17, 1982.
Decided: Oct. 8, 1982.

Thomas D. Whittington, Jr., of Wilson & Whittington, Wilmington, and Irving Bizar, of Schreiber & McBride, Pincus, Ohrenstein, Bizar, D'Alessandro & Solomon, New York City, for plaintiff.

Bruce M. Stargatt, and Jack B. Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, and Robert C. Myers, of Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for individual defendants.

Andrew B. Kirkpatrick, Jr., and A. Gilchrist Sparks, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Conoco Inc.

BROWN, Chancellor.

In capsule form this suit, at its inception, was a derivative action filed by a corporate shareholder. Various officers and directors of the corporation, as well as the corporation itself, were named as defendants. The suit attacks and seeks to set aside a series of employment related agreements entered into between the corporation and certain of its key officers and managerial personnel. Subsequent to the filing of the suit a third party, through a combined tender offer and merger, acquired all of the outstanding stock of the corporation, thus terminating the shareholder status of the derivative plaintiff. The defendants have now moved to dismiss, or, alternatively for summary judgment, on the grounds that the plaintiff's standing to continue to prosecute the derivative action has been lost.

The defendants also challenge the sufficiency of service of process as to certain of their number. Further, they seek a dismissal or summary judgment on the additional grounds that the plaintiff failed to make a demand upon the board of directors of the corporation with respect to the matters set forth in the complaint prior to filing the suit, and that he failed to plead with particularity in the complaint the reasons justifying his failure to do so. While I feel that in all likelihood the defendants are correct in all of their contentions, I find it necessary to deal only with the issue of standing since I think it to be dispositive of the litigation in its entirety.

This is another of the many shareholder suits which have been filed in this Court over the years by a plaintiff named Harry Lewis.[1] The suit was filed on July 17, 1981 as a derivative action on behalf of Conoco, Inc. At the time Conoco, Inc. was a publicly held Delaware corporation.

The complaint charges that in anticipation of a potential takeover of the corporation by outside interests the defendant directors of Conoco, Inc., during June and July 1981, authorized and caused the corporation to enter into agreements with nine of its senior officers which, in effect, guaranteed them certain compensation benefits through a term expiring April 1, 1989 in the event that their employment or the performance of their duties was effected by a change in the control of the corporation during that period. The entitlement of the officers to these benefits, it is alleged, was also to be activated in the event that Conoco, Inc. became no longer listed on the New York Stock Exchange, or in the event that another corporation or group of persons acquired 20 per cent or more of the outstanding stock of the corporation. It is argued that the estimated value of these agreements, and thus the cost to Conoco, was in the vicinity of $10 million.

The complaint charges that these agreements were improper and illegal, a fraud upon the corporation and a waste of corporate assets without a justifiable business purpose. It is undisputed that the agreements were authorized and approved following a tender offer by Dome Petroleum Ltd. for 20 per cent of the stock of Conoco. It is also undisputed that on June 25, 1981, approximately one week after the agreements were authorized, the Seagram Com-

---

1. In more than nine years as a member of the Court of Chancery I have noticed that each year seems to bring forth several new shareholder-related suits brought in the name of Harry Lewis. Over the same period, however, because of settlements, voluntary dismissals, mooted actions and the like, I have never had the good fortune to actually lay eyes on anyone claiming to be Harry Lewis. From time to time I would check with other members of the Court. As best I can tell, none of them has ever seen this apparent champion of the minority shareholders either. I must facetiously admit that more than once the suspicion crossed my mind that perhaps no such person as Harry Lewis actually existed, that perhaps he was merely a fiction—a "street name" if you will— utilized at random by various counsel for the purpose of bringing class and derivative actions for the needed protection of shareholder interests.

Then one day not long ago I chanced to meet a respected member of the Delaware corporate bar who, apparently having become aware of my tongue-in-cheek concern, felt constrained to tell me that he had only recently attended a deposition in New York at which Harry Lewis was also in attendance. Thus, I proceed on the assumption that, in fact, Harry Lewis lives.

pany, Ltd. commenced a tender offer for Conoco which touched off the most expensive bidding war in corporate history to date, with Seagram, Mobil Corporation and E.I. duPont de Nemours and Company (hereafter "DuPont") seeking control of Conoco.

Eventually, after the complaint in this action had been filed and while the suit was pending, DuPont, through a tender offer by its wholly-owned subsidiary, DuPont Holdings, Inc., gained a majority interest in Conoco. This was followed by a merger transaction whereby Conoco was merged into DuPont Holdings. The name of DuPont Holdings was then changed to Conoco, Inc. Under the terms of the merger the remaining shareholders of the original Conoco, including the plaintiff Lewis, received a stock interest in DuPont in return for their former Conoco shares. Thus, as a result of the merger transaction brought about by DuPont, the original Conoco, Inc. ceased to exist as a separate legal entity, DuPont became the sole shareholder of the surviving corporate entity now known as Conoco, Inc., and the plaintiff Lewis was transformed into a shareholder of DuPont. It is against this setting that the plaintiff's standing to maintain his derivative action must be measured.

Stated as a general principle it is well established under Delaware law that a plaintiff bringing a derivative suit on behalf of a corporation must be a stockholder of the corporation at the time that he commences the suit and that he must maintain that status throughout the course of the litigation. *Harff v. Kerkorian,* Del.Ch., 324 A.2d 215 (1974); *Hutchinson v. Bernhard,* Del.Ch., 220 A.2d 782 (1965); *Braasch v. Goldschmidt,* Del.Ch., 199 A.2d 760 (1964); *Heit v. Tenneco, Inc.,* 319 F.Supp. 884 (D.Del.1970).

The situation of the plaintiff Lewis here is much like that of the derivative plaintiff in *Heit v. Tenneco, Inc., supra,* a federal case applying Delaware law. In *Heit,* the plaintiff, a shareholder of J.I. Case Company, sued derivatively against Tenneco, the

majority shareholder of Case, for diversion of corporate opportunities allegedly belonging to Case. While the suit was pending merger transactions were accomplished whereby Case was merged into a wholly-owned subsidiary company of Tenneco and the minority shareholders of Case, including the plaintiff, were automatically converted to the status of preferred shareholders in Tenneco. As a result the plaintiff was held to have lost his standing to continue the action.

Relying on the decision of this Court in *Braasch v. Goldschmidt, supra,* it was held that the pending derivative claim of Case, which, if valid, was an asset of Case, passed by operation of law to and became an asset of the subsidiary corporation of Tenneco which survived the merger. In the words of Judge Latchum at 319 F.Supp. 888:

> "Case, which then ceased to exist, would have been barred from instituting or maintaining the present claims against defendants because its right of action was ultimately transferred to [the surviving corporation]. Since Case, the old company, was barred from bringing or maintaining the action, its former stockholders were likewise prevented from maintaining the suit as a derivative action on Case's behalf."

Similarly, in *Braasch v. Goldschmidt,* it was held that since the right to the derivative cause of action passed to the surviving corporation by virtue of the merger, the former shareholders of the company that had ceased to exist as a result of the merger could not maintain a derivative action on behalf of their former corporation. On the surface, it would seem that these decisions should put an end to the present matter.

On behalf of the indomitable Harry Lewis, however, a different theory is here advanced which, it is argued, renders *Heit* and *Braasch v. Goldschmidt* distinguishable. For the same reason it is further suggested that my previous ruling in the unreported decision of *Dell v. Grimm,* Del.Ch., C.A. # 5785–N.C. (July 17, 1979),[2] a case which

---

2. *Dell v. Grimm* was appealed and argued be-    fore the Delaware Supreme Court but, as I

was four-square with this one and in which I dismissed the action for lack of standing on the part of the plaintiff, was incorrectly decided. Stated simply, the contention is that under the facts of this case the derivative action has been preserved by statute. The argument runs as follows.

Plaintiff starts with 8 *Del.C.* § 261 of our corporation law which provides that

"Any action or proceeding, whether civil, criminal or administrative *pending* by or against any corporation which is a party to a merger or consolidation *shall be prosecuted as if such merger or consolidation had not taken place,* or the corporation resulting from or surviving such merger or consolidation may be substituted in such action or proceeding." (Emphasis added.)

It is argued that this immediately distinguishes *Braasch v. Goldschmidt* since in that case the attempted derivative action was not filed until after the merger had taken place and thus there was no derivative suit "pending" on behalf of the corporation at the time of the merger which could have been saved by the foregoing statute.

As to *Heit,* where the suit was pending at the time of the merger, it is pointed out that the derivative claim was against the majority shareholder for the alleged usurpation of corporate opportunities, a claim which was effectively rendered moot when the majority shareholder, through the merger process, became the 100 per cent owner of the corporation. It is argued that this "mooting" of the claim must be the true basis for the decision in *Heit* for otherwise the federal court would have been left with the anomalous situation in which, in effect, a corporation would have been suing its 100 per cent parent to recover for its own benefit as a wholly-owned subsidiary. The factor which distinguishes that case from this one, it is argued, is that in *Heit* the suit was brought solely against the parent while here the derivative claim is made against individual officers and directors of the corporation itself, and thus the merger

does not give rise to the potential anomaly that dictated the result in *Heit.*

Continuing on, it is argued that this distinction was clearly recognized by our Supreme Court in *Bokat v. Getty Oil Co.,* Del.Supr., 262 A.2d 246 (1970). That case involved two derivative actions brought on behalf of Tidewater Oil Company against Getty Oil Company as well as certain officers and directors of Getty. At the time Getty, through a subsidiary, controlled Tidewater. The complaints sought damages for the alleged improper management of Tidewater. While the suits were pending, Tidewater was merged into Getty and the plaintiff's shares in Tidewater were exchanged for shares in Getty.

On appeal from the dismissal of the actions by this Court the Supreme Court affirmed, holding on the rationale of *Braasch v. Goldschmidt* that the merger had rendered moot the action against Getty since otherwise "the anomalous situation of a corporation suing itself for its own benefit would be presented." 262 A.2d 249. The Court, however, went on to state as follows at 262 A.2d 250:

"This conclusion, however, does not mean that the claims asserted against the individual defendants, among them J. Paul Getty, have likewise been made moot. Such is not the case."

The Court then proceeded to affirm the dismissal as to the individual defendants on the basis that, for the reasons given in the opinion, the claims against them were barred by the statute of limitations.

Thus, on behalf of the plaintiff here, it is argued that *Bokat* stands for the recognition of the principle that under 8 *Del.C.* § 261 a derivative action against named individuals for wrongs against the corporation, and one which is not rendered moot under the terms of a subsequent merger, survives the merger and, in the words of the statute "shall be prosecuted as if such merger . . . had not taken place."

To fortify his view that this is so, plaintiff cites *Susman v. Lincoln American*

understand it, the appeal was voluntarily termi-       nated prior to a final decision.

*Corp.,* 587 F.2d 866 (7th Cir.1978). In that case the Court of Appeals, applying Delaware law, interpreted the previously quoted language from *Bokat* to mean precisely what plaintiff says that it means. While acknowledging that the statement in *Bokat* was *dictum,* the federal court stated as follows at 587 F.2d 872:

> "The cited language in *Bokat* has been analyzed at some length in a decision of the United States District Court for the Southern District of New York. *Abrams v. Occidental Petroleum Corp.,* 20 Fed. Rules Serv.2d 170 (S.D.N.Y.1975) (interpreting California and Delaware law). Judge Palmieri concluded that the *Bokat* language was an attempt to reconcile the savings clause of 8 *Del.C.* § 261 with the anomalous situation of a corporation suing itself. Therefore, he reasoned, a derivative suit begun by a shareholder against third parties prior to a merger could be continued after the merger (because of § 261) but that a similar suit brought against what was to become the surviving corporation must be dismissed after the merger to prevent the incongruous situation of a corporation suing itself. 20 Fed.Rules Serv.2d at 175.

> "We cannot disregard the clear language of the Delaware Supreme Court. We hold, therefore, that while the dismissal of the derivative claims against Lincoln American Life Insurance Company must be affirmed, the dismissal of those same claims against the third-party defendants must be reversed."

In the decision of *Abrams v. Occidental Petroleum Corp.,* cited in *Susman,* the District Court in New York, in addition to relying in part on *Bokat,* relied also on the rationale of *Albert v. Salzman,* 41 App. Div.2d 501, 344 N.Y.S.2d 457 (1973), a case in which it was held that a former shareholder of a Delaware corporation that had been merged into another corporation could continue a previously commenced derivative action against the directors of the merged corporation. *Albert v. Salzman* apparently conceded that a pending derivative suit could not survive a merger if the result would be that of a corporation suing itself.

As to the individual defendants named in such a suit, however, it was stated as follows at 344 N.Y.S.2d 461:

> "A merged corporation does not by merger lose a cause of action which it had prior to the merger (Business Corporation Law § 906(b)(3)).[1] Consequently a derivative action on its behalf survives the merger [citations omitted]. So far as the individual defendants are concerned, whether the action be regarded as derivative or representative there is no difficulty. Concededly if the action is representative no obstacle to suit is presented.

> [1] As Odell is a Delaware corporation, it should be noted that a virtually duplicate statute exists in Delaware (Delaware General Corporation Law, § 261)."

Thus, plaintiff cites *Susman, Abrams* and *Albert v. Salzman* as three decisions which have interpreted either *Bokat* or § 261 as saving a derivative action brought against individual officers and directors despite a subsequent merger which terminated the separate existence of the corporation. I find, however, that I have trouble with this proposition.

In the first place there is no mention whatever in *Bokat* of § 261. Since our Supreme Court did not deal with the statute at all, I cannot find it to constitute the clear expression of our law on the subject as did the federal court in *Susman.* For the same reason the effort made in *Abrams* to interpret *Bokat,* while commendable, would appear slightly flawed.

Also, *Abrams* is based in part on *Albert v. Salzman* and its holding under New York law with footnote reference to § 261. However, I do not find that holding to be consistent with Delaware law. Moreover, its assertion that a derivative action survives a merger simply because a cause of action held by a corporation will survive a merger constitutes a conclusion which does not necessarily follow from its premise.

More importantly, I respectfully feel that the plaintiff, as well as the courts in *Susman* and *Abrams,* have read something into the *Bokat* decision that simply is not there.

One must recall that initially in *Bokat* the Supreme Court found that the pending derivative action against Getty Oil Company had become moot as a result of Tidewater's merger into Getty. The Court then proceeded to make its statement that this did not mean that the pending claims against the individual defendants had "likewise been made moot."

What the Court was talking about there was the mootness of the pending claims against the individual defendants, not the standing of the then former shareholder to continue to prosecute them as a derivative plaintiff. Without addressing the standing issue, the Court proceeded to find that even though the claims against the individual defendants had not been mooted by the merger, they were nonetheless barred by the statute of limitations. Thus, *Bokat* turned on the viability of the claims and not on the standing of the plaintiff, in her then non-shareholder status, to continue to assert them.

But in this case the issue is that of standing. The motion to dismiss is based on the contention that because of the merger the plaintiff has been deprived of his standing to continue to prosecute the action since his original right to do so derived from a shareholder status which he no longer has. The issue here is not one of mootness.

This, I think, illustrates the source of the problem. The defendants have moved to dismiss for lack of standing on the part of the plaintiff. The plaintiff has responded by arguing that the cause of action asserted against the individual defendants has not become moot. The two theories do not mesh. The fact that claims may still exist against the individual defendants does not necessarily mean that the plaintiff still has the right to prosecute them.

Viewed against this distinction, I do not find that § 261 supports the plaintiff's argument. This is particularly true since—as plaintiff chooses to ignore—the statute is written in the disjunctive. It provides either that the pending suit by or against a corporation shall be prosecuted as if the merger had not taken place or, alternatively, that "the corporation surviving or resulting from such merger or consolidation may be substituted in such action or proceeding." Thus, while the statute preserves the claims set forth in an action which predates a merger, it does not necessarily lock in the parties who may prosecute those claims following the merger. The substitution of the surviving corporation as a proper party to prosecute or defend a pending action is clearly contemplated. This gets us back to our Delaware precedents.

*Bokat v. Getty Oil Co., supra,* and *Braasch v. Goldschmidt, supra,* clearly hold that the right to a pending cause of action is an asset of a merged corporation which passes to the corporation surviving the merger. Under the facts of this case, any right to equitable relief possessed by the original Conoco against the individual defendants, as its officers and directors, passed to DuPont Holdings, and thus to the present Conoco, by virtue of the merger. Likewise, by the terms of the same merger, the plaintiff Lewis ceased to be a shareholder of Conoco—either new or old—and instead became a shareholder of DuPont. The company of which the plaintiff is now a shareholder, DuPont, now owns all of the stock of the present Conoco and, if the original Conoco had a claim for relief against its former officers and directors for the reasons set forth in the complaint in this action, that claim is now owned by the present Conoco. The shareholder beneficiary of such a claim is now DuPont, and not the plaintiff Lewis and the other shareholders of the original Conoco as was the situation when the suit was filed.

Given this scenario brought about by the merger, what logical justification can there be for permitting the plaintiff Lewis, who is no longer a shareholder of the entity possessing the claim, to continue to prosecute the action on behalf of the new Conoco without regard to the feelings of its present 100 per cent shareholder, DuPont? Offhand, I can think of none.

In the unreported case of *Dell v. Grimm* mentioned earlier a derivative action had been filed on behalf of Technicare Corpora-

tion. Shortly thereafter a merger was approved by the shareholders of both corporations whereby Technicare became the wholly-owned subsidiary of Johnson & Johnson, a corporation which, like DuPont here, was not involved in the derivative litigation. Plaintiff argued that her right to continue the derivative action was preserved by § 261 despite her elimination as a shareholder. In dismissing the derivative suit for the resulting lack of standing on the part of the plaintiff, it was stated as follows in that unreported decision:

"But the problem is that the plaintiff has been attacked on the theory that she now lacks standing to maintain the suit, and she has responded by arguing that the cause of action is not moot. It may not be moot and, in theory, there may be a cause of action on behalf of Technicare against the other defendants. The point is that since Johnson & Johnson is now the only shareholder of Technicare, a position it has knowingly acquired at the merger price with the approval of Technicare's former shareholders, it is no longer legally appropriate for the plaintiff, who has ceased to be a stockholder of Technicare and who is now a shareholder of Johnson & Johnson at best, to wage battle on behalf of Technicare and its sole shareholder, Johnson & Johnson. With the approval and consummation of the merger, the therapeutic justification for the plaintiff's derivative action has vanished. Likewise, her personal standing to continue to conduct the litigation has thus been undercut, regardless of whether or not the cause of action has also been rendered moot by the merger. This appears to be the teaching of *Heith v. Tenneco, Inc.* and *Braasch v. Goldschmidt.*"

So here it would seem that the therapeutic justification for the derivative suit brought by the plaintiff Lewis has likewise vanished by virtue of the fact that DuPont, presumably with knowledge of the pendency of this suit and the existence of the employment contracts in issue, chose for a price to acquire the original Conoco in its entirety. Stated another way, since DuPont has now become the sole shareholder of Conoco, is it really necessary that its newly-acquired shareholder interests in Conoco be protected by the efforts of the plaintiff Lewis?

In *Bokat v. Getty Oil Company, supra,* our Supreme Court recognized that in extreme cases equitable circumstances may well exist which would justify permitting a shareholder plaintiff in a derivative suit to continue a pending action in his own right despite technical loss of shareholder status resulting from a subsequent merger. 262 A.2d 250.[3] No such circumstances exist here, however. Rather, this is a straightforward case in which the standing of the plaintiff to continue the derivative action has been lost as a result of a merger unrelated to the matters which form the basis for the suit.

For the reasons stated the motion to dismiss is granted. An appropriate form of order may be submitted.

---

**3.** In this regard, compare *Helfand v. Gambee,* Del.Ch., 136 A.2d 558 (1957) and, more recently, *Schreiber v. Carney,* Del.Ch., 447 A.2d 17 (1982).