[No. A027033. First Dist., Div. Three. Oct. 18, 1985.]

TILLY GAILLARD, Plaintiff and Appellant, v.
NATOMAS COMPANY et al., Defendants and Respondents.

COUNSEL

David B. Gold, Paul F. Bennett, Solomon B. Cera, Richard D. Harmon, Barrack, Rodos & Bacine, Leonard Barrack and Gerald Rodos for Plaintiff and Appellant.

Skadden, Arps, Slate, Meagher & Flom, James E. Lyons, Lisabeth D. Rothman, Orrick, Herrington & Sutcliffe, James K. Haynes, Ronald Hayes Malone, Barbara Moses, Morrison & Foerster, David G. Robertson, Vincent J. Chiarello, Pillsbury, Madison & Sutro, William I. Edlund and John F. McLean for Defendants and Respondents.

OPINION

**SCOTT, J.**—Tilly Gaillard (Gaillard) appeals from an order of dismissal entered subsequent to the sustaining of respondents'[1] demurrer to her first amended complaint.[2] We conclude that the involuntary divestment of stock, by reason of merger, does not prevent an individual from obtaining the grant of standing under Corporations Code section 800, subdivision (b)(1), where that individual was a shareholder of record at the time of filing the derivative action and at the time of the transaction of which he or she complains. As Gaillard has fulfilled this contemporaneous ownership requirement, she may maintain her shareholder derivative action.

I

Preliminarily, we note that for the purposes of this appeal we must accept the allegations of the complaint as true.

---

[1]Three of the respondents in this appeal are corporations: Natomas Company, a California corporation; Diamond Shamrock Corporation, a Delaware corporation; and, American President Companies, Ltd., a Delaware corporation. The remaining respondents are the 19 individuals who were the members of the Natomas board of directors.

[2]Appellant does not appeal from that portion of the minute order sustaining the demurrer of defendant American President Companies, Ltd.

Gaillard was a common stockholder of Natomas Company (Natomas) three years prior to the merger of Natomas and Diamond Shamrock Corporation (Diamond). Natomas is a publicly held corporation, organized and existing under the laws of the State of California. In May 1983, Diamond initiated a hostile tender offer to acquire voting control of Natomas. Diamond stated in the tender offer that it contemplated merging Natomas into Diamond after acquiring voting control of Natomas. After negotiation, a merger agreement was reached so as to avoid a hostile takeover. The board of directors of Natomas approved the agreement and recommended approval to the Natomas shareholders. The agreement was approved on August 30, 1983.

On August 31, 1983, prior to the merger becoming effective, Gaillard filed a shareholder derivative suit challenging the "golden parachute"[3] agreements and other benefits provided for certain officers and directors of Natomas. These various benefits were approved by the board of directors and shareholders of Natomas as part of the merger agreement. She alleged that payment of $15 million was to be made to five officers and directors of Natomas and that each of the Natomas directors breached his or her fiduciary duty by negotiating, approving and recommending the payments. More importantly and critical to our determination of her appeal, Gaillard alleged that she was a shareholder of record at the time of the acts of which she complained and at the time of the filing of the complaint.

The merger became effective at 8:59 p.m. on August 31, 1983. As a consequence, Gaillard, as well as all other common stockholders, was forced to exchange her shares in Natomas for common stock in New Diamond Corporation.[4] New Diamond Corporation became the sole shareholder of Natomas' common stock.

All defendants demurred to Gaillard's complaint. The trial court sustained the demurrers because it found that Gaillard lost standing to proceed with the derivative action when she was no longer a shareholder of Natomas. Although Gaillard was allowed 30 days to amend her complaint she did not do so. Instead, in accordance with Code of Civil Procedure section 581, subdivision 3, Gaillard chose not to amend her complaint, and the court granted a motion to dismiss her complaint. Gaillard appeals.

---

[3]The term as used here refers to payments guaranteed to an officer of an acquired corporation to assure that the officer will receive financial remuneration upon leaving his or her position with the acquired corporation.

[4]New Diamond Corporation was formed in May 1983 for purposes of the merger. It has renamed itself Diamond Shamrock Corporation.

## II

This case presents the question of whether a shareholder, who has met the contemporaneous ownership requirement under Corporations Code section 800, subdivision (b)(1), for shareholder derivative actions, has standing to proceed with her complaint following the merger of her corporation and the resulting involuntary loss of shareholder status. We hold that she does.

The statute in question provides: "No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares or of voting trust certificates of the corporation unless both of the following conditions exist: (1) The plaintiff alleges in the complaint that plaintiff was a shareholder, of record or beneficially, or the holder of voting trust certificates *at the time of the transaction* or any part thereof of which plaintiff complains or that plaintiff's shares or voting trust certificates thereafter devolved upon plaintiff by operation of law from a holder who was a holder at the time of the transaction or any part thereof complained of . . . ." (Corp. Code, § 800, subd. (b)(1), italics added.)

██ Reading the statute in a reasonable light and attributing to it its ordinary and proper meaning, we find there is no requirement for continuing stock ownership in order for an individual, who is a shareholder at the time of the transaction complained of and at the time the action is filed, to proceed with a derivative action. ██ "It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed." (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) ██ The statute herein clearly states that the plaintiff must be a shareholder "at the time" of the alleged wrongdoing. It does not have an express provision requiring a plaintiff to maintain shareholder status throughout the course of the litigation. ██ ██ Under the maxim that the expression of certain things in a statute necessarily precludes the inclusion of things not expressed, we cannot presume continuing shareholder status is a requirement of Corporations Code section 800, subdivision (b)(1). (See *Henderson* v. *Mann Theatres Corp.* (1976) 65 Cal.App.3d 397, 403 [135 Cal.Rptr. 266] [where court discusses *expressio unius est exclusio alterius*].)

To rule otherwise would create an anomalous result. We could well have a situation where a shareholder files a derivative action, navigates laboriously through the pleading stage, undertakes extensive discovery, incurs sizeable monetary obligations, and then, after an elapse of several years, is precluded from proceeding further because his or her corporation has just merged with another. It could not have been the intention of the Legislature that the adjudication of an alleged wrong be concluded in this manner.

Further, we must interpret the words "instituted" or "maintained" in section 800 of the Corporations Code independently of each other. (*Houge v. Ford* (1955) 44 Cal.2d 706, 712 [285 P.2d 257].) Accordingly, we reject respondents' argument that the words "[n]o action may be . . . maintained . . . by any holder of shares" implies that California law has a continuing ownership requirement. Respondents contend that to interpret it otherwise would render the word "maintained" surplusage. We find it a reasonable interpretation that "maintained" was included to allow one who, by operation of law, becomes an owner of shares which already are the basis of a derivative action, to continue that litigation. (See ABA Model Bus. Corp. Act (1975) § 49.)

■ We are required to give statutes a reasonable construction which conforms with the apparent purpose and intent of the Legislature. (See *Clean Air Constituency* v. *California State Air Resources Board* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d 617].) ■ Certainly, there was no intent on the part of the Legislature to include the requirement of continuing stock ownership in Corporations Code section 800 when its predecessor, section 834, was enacted. The contemporaneous ownership requirement was originally included in Corporations Code section 834 in order to prevent suits by individuals who had acquired stock for the sole purpose of bringing a derivative lawsuit. (Ballantine, *Abuses of Shareholders Derivative Suits: How Far is California's New "Security for Expenses" Act Sound Regulation?* (1949) 37 Cal.L.Rev. 399, 414-415.) ■ Further, as the subsequent revisions to section 800 have been patterned, inter alia, after the Model Business Corporation Act prepared by the Committee on Corporate Laws of the American Bar Association, Corporation, Banking and Business Law section, we note with interest the lack of a continuing ownership requirement there.[5] (Assem. Select Com. Rep. on the Revision of Corp. Code (Dec. 1, 1975), pp. 1-2; ABA Model Bus. Corp. Act (1975) § 49.) ■ Furthermore, we find it significant that the 1975 legislative changes to this section were made for the purpose of relaxing the contemporaneous ownership requirement. (See Assem. Select Com. Rep., *supra*, p. 88.) ■ In light of this intent, we do not read a continuing ownership requirement into the statute.

Respondents place reliance on the case of *Mueller* v. *MacBan* (1976) 62 Cal.App.3d 258 [132 Cal.Rptr. 222], for the point that California case law requires a restrictive interpretation of section 800. They propose our inter-

---

[5]The Model Business Corporation Act states: "No actions shall be brought . . . by a shareholder in the right of a domestic or foreign corporation unless the plaintiff *was a holder of record of shares* or of voting trust certificates therefor, *at the time of the transaction of which he complains,* or his shares or voting trust certificates thereafter devolved upon him by operation of law from a person who was a holder of record at such time. (Italics added.)

pretation should, therefore, include a continuous ownership requirement. In fact, the converse is true. The one California case interpreting this section has found a trend toward a liberal construction of the standing requirement in derivative suits. (*Pearce* v. *Superior Court* (1983) 149 Cal.App.3d 1058, 1064 [197 Cal.Rptr. 238].)

The pertinent portions of the *Mueller* case discussed the standing of a shareholder of a savings and loan association to bring a derivative action, under the provisions of former section 7616 of the Financial Code,[6] which had similar language to Corporations Code section 800. (*Mueller* v. *MacBan, supra,* 62 Cal.App.3d at pp. 268-270.) However, *Mueller* is clearly distinguishable from the case before us as the plaintiff therein was not a shareholder in the association at the time he sought to institute the action on behalf of the association. (*Id.,* at p. 269.) Respondents in the case at bench make no contention that Gaillard was not a shareholder of Natomas at the time the action was filed nor do they make any claim that the action was not filed prior to the time the merger became effective.

Also, in *Mueller,* the Court of Appeal did not even reach the issue before us. The *Mueller* court merely found that since no challenge to the plaintiff's standing to institute or maintain such derivative action was made in the trial court, the plaintiff could proceed with the derivative action. Certainly, the *Mueller* opinion is inapposite to respondents' proposed statutory construction.

Respondents contend that the status of Gaillard is controlled by the statement in *Mueller* that "one who is not a stockholder in a savings and loan association is not qualified to bring a derivative action on behalf of such an association." (*Mueller* v. *MacBan, supra,* 62 Cal.App.3d at p. 269.) We do not agree. First, the statement must be characterized as dicta in view of the holding of the court, and, secondly, Gaillard was a shareholder of Natomas when she brought the derivative action on behalf of the corporation.

In their search for a California case to support their proposed interpretation of Corporations Code section 800, respondents place great reliance on *Stockton* v. *Ortiz* (1975) 47 Cal.App.3d 183 [120 Cal.Rptr. 456]. They cite the *Stockton* case for the proposition that the necessary connection between a derivative plaintiff and the corporation cannot be made by a nonshareholder of the corporation on whose behalf the action is brought. Respondents quote the following portion of the opinion: "[P]laintiff is not listed

---

[6]This repealed statute read as follows: ". . . Such [derivative] action may not be instituted or maintained by a stockholder of any association, unless all of the following conditions exist . . . ."

anywhere as a *shareholder,* partner, director, officer or fiduciary having a *legal* fiduciary interest in Inversiones, S.A., or Club Aereo, S.A. Thus, plaintiff is unable to show a *'legal nexus'* between himself and Inversiones, S.A., or Club Aereo, S.A. There is a link missing in the requisite legal chain upon which to base a derivative action under California law." (*Id.,* at p. 195.) However, the *Stockton* case fails to support respondents' position. The plaintiff in *Stockton* was not and never had been a shareholder in either of the corporations on whose behalf he was attempting to bring suit. The facts of the instant case diverge greatly from those in *Stockton.*

Nor does the case of *Schilling* v. *Belcher* (5th Cir. 1978) 582 F.2d 995, provide support for respondents' argument. In that case the Fifth Circuit Court of Appeals held that "a shareholder who sells his stock pending appeal of a favorable judgment in a shareholder's derivative suit against the corporation, loses standing to further prosecute or defend the case" except to the extent that the judgment is personally in his favor. (*Id.,* at p. 996.) Respondents cite this case to demonstrate that jurisdictions outside California require continuous ownership of stock by a plaintiff in order to maintain a shareholder's derivative action. However, we cannot consider *Schilling* persuasive for two reasons. First, unlike the plaintiff in *Schilling,* Gaillard did not voluntarily sell her stock pending further action in her lawsuit. Instead, Gaillard was forced to exchange her shares of Natomas for shares in New Diamond because of the merger of her corporation. Second, the derivative action in *Schilling* was in federal court on the jurisdictional basis of diversity of citizenship. Finding no conflict between the standing requirements for derivative suits in federal court and those under Florida law, the *Schilling* court saw further support for its holding in the Federal Rules of Civil Procedure, rule 23.1 (28 U.S.C.), which has an implied continuous ownership requirement. (*Schilling* v. *Belcher, supra,* 582 F.2d at p. 999.) We are certainly not concerned here with the federal rules or their interpretations.

We also distinguish the holding of *Niesz* v. *Gorsuch* (9th Cir. 1961) 295 F.2d 909, that "upon the completion of the merger Gorsuch lost his standing as a stockholder of United and therefore his capacity to maintain this stockholder's derivative action." (*Id.,* at p. 913.) The derivative suit in *Niesz,* filed four months prior to United's merger, alleged breaches of fiduciary duties by the various defendants which were unrelated to the merger. (*Id.,* at pp. 911-912.) Following the merger, United, the corporation on whose behalf the suit was brought, ceased to exist. (*Id.,* at p. 912.) In coming to its decision, the Ninth Circuit concluded that the Arizona statutes which allow a corporation to exist following a voluntary dissolution, for the limited purpose of winding up its affairs, did not apply. The former corporation in *Niesz* did not exist legally or fictitiously following merger. However, the

court stated that there were two means by which the lawsuit could have been continued post merger: either the surviving corporation, as an indispensable party, intervenes as party plaintiff; or, a shareholder of the surviving corporation intervenes as a party defendant and then later joins the surviving corporation. (*Id.*, at p. 913.)

The background and outcome of *Niesz* differ significantly from those presented herein. In contrast to the merged corporation in *Niesz,* Natomas did not cease to exist entirely. It remained intact as a subsidiary company within the Diamond corporate framework. Also, because Gaillard's suit is based almost entirely upon the respondents' acts in connection with the merger, alternatives to maintaining the suit in its present form do not exist. In *Niesz* the surviving corporation was not named as a defendant, nor was it alleged to be a party to the transactions complained of. As a result, the Ninth Circuit considered its cooperation in maintaining the lawsuit as feasible. Here, Diamond was named as a defendant and was alleged to have been responsible for the allegedly violative acts. It is nonsensical to consider the possibility of Diamond intervening as a party plaintiff to sue itself.

It has been said that one of the rationales for allowing a shareholder standing in a derivative action is the monetary benefit that will necessarily ensue if the shareholder is successful. (*Ashwander* v. *Tennessee Valley Authority* (1936) 297 U.S. 288, 321-322 [80 L.Ed. 688, 697, 56 S.Ct. 466].) The reasoning is that the shareholder maintains a proprietary interest in the litigation and will, therefore, vigorously prosecute an action on the corporation's behalf. Respondents contend that an interpretation of the statute which does *not* require continuing stock ownership allows a plaintiff with no pecuniary interest in the stock to litigate a derivative action. Respondents allege Gaillard has no incentive to prosecute.

We are not persuaded by this argument. The fact that a merger occurred here does not preclude Gaillard from having a pecuniary interest in the outcome. Gaillard will, in fact, benefit from a favorable judgment. As a shareholder of Diamond, she has a proprietary interest in the corporation which is the sole shareholder of Natomas. Thus, any benefit to Natomas by a damages award will increase the value of Natomas' stock. Likewise, Gaillard's stock in Diamond will experience some benefit too. It is difficult to distinguish the "indirect" benefit that Gaillard will receive from the "direct" benefit that a shareholder of a giant corporation would receive in a derivative action where no merger has occurred.

Nor are we swayed by respondents' assertion that Gaillard cannot be held accountable for the institution of this suit. A review of both statute and case law demonstrates that such contention cannot withstand analysis. Corpora-

tions Code section 800, subdivision (c), provides that any shareholder who commences a derivative suit may be required to furnish security for expenses upon a proper showing by defendants. ■ Furthermore, California courts have found that shareholder derivative plaintiffs may be considered as trustees or guardians ad litem to the corporation's right of action. (*Whitten* v. *Dabney* (1915) 171 Cal. 621, 630-632 [154 P. 312]; *Ensher* v. *Ensher, Alexander & Barsoom, Inc.* (1960) 187 Cal.App.2d 407, 410 [9 Cal.Rptr. 732].) Such plaintiffs have no power to settle or compromise the corporation's action absent court approval. (*Ibid.*)

■ ■ Because a shareholder's derivative suit is an equitable action (*Rosenfeld* v. *Zimmer* (1953) 116 Cal.App.2d 719, 722 [254 P.2d 137]), we must also take into account the fairness to Gaillard of interpreting the statute to require continuing stock ownership.

First, we cannot ignore that an interpretation of section 800 so as to require continuing stock ownership will leave Gaillard and all those similarly situated without a remedy. Despite respondents' assertions, a so-called "double derivative" lawsuit[7] by Gaillard as a shareholder in Diamond is not a feasible alternative to the maintenance of the lawsuit in its present form. A "double derivative" suit in the context of this case would necessarily result in the loss of Gaillard's causes of action against Diamond as a corporate entity as they would be dismissed as moot. (See *Bokat* v. *Getty Oil Co.* (Del. 1970) 262 A.2d 246, 249.) We fail to see how dismissal for mootness could be avoided inasmuch as a "double derivative" suit by Gaillard would present the anomalous situation of a corporation suing itself for its own benefit, because of acts it performed.

Furthermore, Gaillard's filing of a "double derivative" shareholder suit could not meet the contemporaneous ownership requirement of Corporations Code section 800, subdivision (b)(1), or either of the two exceptions set forth there: the "operation of law" exception and the "discretion of the court" exception. She was not a shareholder of Diamond at the time of the transaction of which she complains, i.e., the merger. Nor did her shareholder status in Diamond devolve upon her "by operation of law from a holder who was a holder at the time of the transaction . . . ." (Corp. Code,

---

[7]A "double derivative" suit has been defined as an action brought by a shareholder of a holding or parent company, on behalf of that corporation, to enforce a cause of action in favor of the subsidiary company. The shareholder is, in effect, maintaining a derivative action on behalf of the subsidiary, since the holding or parent company has derivative rights to the cause of action possessed by the subsidiary. The directors of both the parent and the subsidiary must refuse to enforce the cause of action. (19 Am.Jur.2d, Corporations, § 569, p. 97; Annot. (1945) 154 A.L.R. 1295; 13 Fletcher, Cyclopedia of Corporations (rev. ed. 1984) Stocks and Stockholders, § 5977, p. 207; see also *Goldstein* v. *Groesbeck* (2d Cir. 1944) 142 F.2d 422.)

§ 800, subd. (b)(1).) Instead, Gaillard became a shareholder in Diamond as a result of a forced exchange of Natomas stock for Diamond stock. Finally, it does not appear certain that Gaillard would be able to make a "preliminary showing" at a hearing before the trial court that the five conditions[8] to a discretionary grant of standing are present. In fact, this exception is considered to be "so encumbered with conditions and restrictions that it would appear to be virtually meaningless . . . ." (2 Marsh, Cal. Corporation Law and Practice (1st ed. Supp. 1984) § 14.31, p. 264.1.)

In addition to these disabilities, a "double derivative" shareholder suit would also allow for the assertion of defenses to which Gaillard was not previously subject. ■ Among these possible defenses is the equitable doctrine of unclean hands which is fully applicable in shareholder's derivative suits. (See *Rosenfeld v. Zimmer, supra,* 116 Cal.App.2d at p. 722.) ■ For all these reasons it is clear that a "double derivative" shareholder suit does not offer Gaillard an alternative remedy to the maintenance of her instant suit.

Moreover, the imposition of a continuing ownership requirement in this case would lead to the incongruous result of barring a lawsuit which challenges the wrongful acts of management in bringing about the merger, because of the merger itself. To hold that a merger has the effect of destroying such causes of action would be tantamount to giving free reign to deliberate corporate pilfering by management and then immunizing those responsible from liability by virtue of the merger which they arranged. This would be a grossly inequitable result.

The trial court based its decision to sustain the demurrer on a Delaware case, *Lewis v. Anderson* (Del.Ch. 1982) 453 A.2d 474, affd. 477 A.2d 1040. Although we note with interest the holding in that case, we are not bound thereby. (See *Estate of Steidl* (1948) 89 Cal.App.2d 488, 494 [201 P.2d 58] [where court considered both majority and minority view in other jurisdictions in deciding a question of first impression in California].) ■ In contrast to Delaware, California follows the judicial and legislative trend

---

[8]Corporations Code section 800, subdivision (b)(1), in pertinent part states: "[P]rovided that any shareholder who does not meet such requirements may nevertheless be allowed in the discretion of the court to maintain such action on a preliminary showing to and determination by the court, by motion and after a hearing, at which the court shall consider such evidence, by affidavit or testimony, as it deems material, that (i) there is a strong prima facie case in favor of the claim asserted on behalf of the corporation, (ii) no other similar action has been or is likely to be instituted, (iii) the plaintiff acquired the shares before there was disclosure to the public or to the plaintiff of the wrongdoing of which plaintiff complains, (iv) unless the action can be maintained the defendant may retain a gain derived from defendant's willful breach of a fiduciary duty, and (v) the requested relief will not result in unjust enrichment of the corporation or any shareholder of the corporation . . . ."

of a liberal and expansive construction of derivative suit standing requirements. (*Pearce* v. *Superior Court, supra,* 149 Cal.App.3d 1058, 1064 [197 Cal.Rptr. 238].) ▉ However, even Delaware courts recognize that "in extreme cases equitable circumstances may well exist which would justify permitting a shareholder plaintiff in a derivative suit to continue a pending action in his own right despite technical loss of shareholder status resulting from a subsequent merger." (*Lewis* v. *Anderson, supra,* 453 A.2d at p. 480, citing *Bokat* v. *Getty Oil Co., supra,* 262 A.2d 246, 250.)

In addition, the factual situation in *Lewis* v. *Anderson* differs from our case. In *Lewis,* the disputed compensation agreement for senior officers of Conoco Inc. was consummated prior to the bidding war which developed among Seagram Company, Ltd., Mobil Corporation and E.I. duPont de Nemours and Company for control of Conoco. Although duPont was a victor in the merger battle, it was not a participant in bringing about the transaction complained of in the derivative action. Also, after the merger; the original Conoco ceased to exist as a separate entity. In the case at bench, Diamond was a participant in the transaction complained of, and Natomas continues to exist as a separate entity.

We have found no California decisions on this question of a continuous ownership requirement. However, one federal district court in New York found that California law permits the viability of actions by a constituent corporation against a third party if the actions were already pending at the time of the merger. (*Abrams* v. *Occidental Petroleum Corp.* (S.D.N.Y. 1975) 20 Fed.R.Serv.2d 170, 173.) *Abrams* involved the merger of a California corporation into a Delaware corporation. Shareholders in the merged California corporation had filed derivative actions prior to the merger. Subsequent to the merger, however, the plaintiffs lost their status as shareholders in the merged corporation. (*Id.,* at p. 171.) The court in *Abrams* based its holding on the provisions of California's statute for survival of corporate causes of action upon merger, section 4116 of the Corporations Code (now § 1107),[9] and cases decided thereunder. (See *J. C. Peacock, Inc.* v. *Hasko* (1960) 184 Cal.App.2d 142 [7 Cal.Rptr. 490].) The district court denied defendant's motion to dismiss based on the plaintiff's involuntary loss of shareholder status through merger. (*Abrams* v. *Occidental Petroleum Corp., supra,* 20 Fed.R.Serv.2d at p. 176.)

While the law of survival of corporate causes of action following merger is not determinative of our decision, we view the provisions of Corporations

---

[9]Corporations Code section 1107, subdivision (c), provides: "Any action or proceeding pending by or against any disappearing corporation may be prosecuted to judgment, which shall bind the surviving corporation, or the surviving corporation may be proceeded against or substituted in its place."

Code section 1107 as yet another factor in support of granting standing to Gaillard.

The judgment of dismissal is reversed with directions to the trial court to overrule the demurrer.

White, P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied November 13, 1985, and respondents' petition for review by the Supreme Court was denied January 16, 1986. Lucas, J., was of the opinion that the petition should be granted.