**Ethel FISCHER and Herbert Bonime, Plaintiffs,**

v.

**CF & I STEEL CORPORATION, Thomas M. Evans, Southern Pacific Company and Southern Pacific Transportation Company, Defendants.**

**Mary MAYER, Plaintiff,**

v.

**CF & I STEEL CORPORATION, Thomas M. Evans, Southern Pacific Company and Southern Pacific Transportation Company, Defendants.**

**Nos. 82 Civ. 5424(MEL), 82 Civ. 6159(MEL).**

United States District Court, S.D. New York.

Dec. 20, 1984.

Lowey, Dannenberg & Knapp, P.C., Wolf, Popper, Ross, Wolf & Jones, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for plaintiffs; Henry A. Brachtl, Robert A. Skirnick, Ellen P. Chapnick, Richard M. Meyer, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Thom-

as M. Evans and CF & I Steel Corp.; Edward N. Costikyan, Steven E. Landers, Anne Louise Oates, Steven Gey, New York City, of counsel.

·LASKER, District Judge.

### I.

These shareholder double-derivative suits are brought on behalf of the Southern Pacific Transportation Company ("SPTC"), a subsidiary of the Southern Pacific Company ("Southern Pacific"), a Delaware corporation, against defendant Thomas M. Evans, a former Southern Pacific and SPTC director and the owner of a "substantial interest" in defendant CF & I Steel Corp. ("CF & I"). The shareholder plaintiffs allege that defendants violated Section 10 of the Clayton Anti-Trust Act, 15 U.S.C. § 20 (1982), by failing to employ statutorily required competitive bidding procedures for purchases between 1978 and 1981 of over $70 million in rails and rail products by SPTC and CF & I. Section 10 requires common carriers such as SPTC to receive competitive bids from potential vendors if any of its directors held a "substantial interest" in the vendor.[1]

Defendants initially moved to dismiss the amended complaints for failure to make a demand upon the directors of Southern Pacific or SPTC to bring or prosecute an action as required under Federal Rule of Civil Procedure 23.1. Plaintiffs cross-moved for summary judgment and to establish defendants' liability under Section 10 of the Clayton Act.[2] Due to the merger of Southern Pacific and Santa Fe Industries ("Santa Fe") creating a new holding company, Santa Fe Southern Pacific Corporation ("SFSP"), defendants subsequently moved to dismiss the complaint on the ground that plaintiffs lack standing to continue these actions. Under the terms of the combination agreement, Santa Fe and Southern Pacific shareholders exchanged their stock for SFSP shares and the two companies became wholly-owned subsidiaries of the new entity. We have reviewed the parties' submissions and arguments and now hold that plaintiffs no longer have standing to assert their claims due to the Santa Fe-Southern Pacific merger.[3]

### II.

Under the terms of the October, 1983 Combination Agreement and Plan of Reorganization, Southern Pacific became a wholly-owned subsidiary of SFSP through a procedure in which SFSP created a wholly-owned subsidiary, SPC (Delaware) Inc., which merged into Southern Pacific which survived. Each share of outstanding Southern Pacific common stock at the time of the merger was converted into 1.543 shares of SFSP common stock. *See* Combination Agreement and Plan of Reorganization, art. I, para. 2, at 3, *reprinted in*, Notice of Motion, filed Mar. 8, 1984, at Exhibit A.[4] The Agreement further stated that it was the contracting parties' intent that the Santa Fe and Southern Pacific SFSP subsidiaries "each continue (so far as practicable and consistent with the basic purposes of [the] Agreement) the separate operations of their respective enterprises" and it provided for an SFSP board of directors composed of premerger directors of both Santa Fe and Southern Pacific. *See id.,* art. 5, at 8–9.

---

1. The amended complaints allege that Evans is the chairman of the board of directors and owner of ten percent of the common stock of Crane Company, which in turn owns over ninety six percent of CF & I, and that Evans' son is 'CF & I's chief executive officer.

2. At a conference on October 13, 1983, we held that defendants' motion to dismiss would be decided first and that, in the event it was denied, defendants would have 20 days to answer plaintiffs' motion.

3. Because this ground alone is sufficient to dismiss the amended complaints, and given the volume of submissions by the parties as to whether the suits should be dismissed for failure to make a demand upon the directors, we do not address defendants' alternative ground for dismissal.

4. An identical procedure was employed for making Santa Fe a wholly-owned SFSP subsidiary. *See* Combination Agreement, art. I, para. 1, at 2.

## III.

Defendants assert that plaintiffs have lost their standing to continue these double-derivative actions because they are no longer shareholders in Southern Pacific. They contend that plaintiffs have lost their proprietary interest in Southern Pacific because SFSP is now the sole shareholder of Southern Pacific stock, and it makes no difference that this state of affairs came about due to a merger transaction instead of a voluntary sale of stock by the plaintiffs. Defendants rely primarily upon Delaware law to argue that even in situations in which shareholders lose their stock through the merger process, a plaintiff continues to have standing in a derivative action only by owning stock in the relevant corporation throughout the litigation.[5] SFSP, in defendants' view, is now the shareholder beneficiary of any claims which Southern Pacific or SPTC previously had against the defendants. They assert that plaintiffs' proper course of conduct as SFSP shareholders is to bring a triple-derivative action on behalf of SFSP after they make a proper demand upon SFSP's board of directors.

Plaintiffs argue that the Santa Fe-Southern Pacific merger does not deprive them of standing because its only effect upon this litigation was to convert the case from a double-derivative to a triple-derivative law suit. They claim that as SFSP shareholders they retain their proprietary interest in SPTC because Southern Pacific survived as a corporate entity after the merger and continues to own its claims against the defendants.

This case, plaintiffs contend, is governed by federal as opposed to state law because it is founded upon a federal claim. They argue that federal cases denying standing to derivative shareholder plaintiffs are distinguishable because in those cases the plaintiffs had sold their shares and thereby surrendered their equity interests in the corporations on whose behalf they had sued. Plaintiffs point out that, in contrast, this case involves an exchange of stock for a new third-tier parent, which at least one court in this District has found does not eliminate derivative plaintiff standing because it is not the same as a sale of stock.[6]

Plaintiffs go on to argue that the Delaware cases relied upon by the defendants are also distinguishable because in those cases the plaintiffs were denied standing to represent corporations that were merged out of existence. They note that here, Southern Pacific survived as a corporation after its merger with Santa Fe. In addition, plaintiffs assert that Delaware law permits their actions to go forward because the merger here was, in effect, a nominal reorganization of Southern Pacific which merely led to the creation of a holding company. They note that the composition of Southern Pacific's board of directors and officers within SFSP remains unchanged since the merger and contend that the liability of the Southern Pacific directors is not removed merely because of a change of hats. Moreover, plaintiffs contend that because of the substantial control which former Southern Pacific officers and directors exert over SFSP and its board, a demand upon the SFSP board of directors to prosecute these actions would be futile. Finally, plaintiffs ask in supplemental letters that they be allowed to continue their suits as a class action on behalf of Southern Pacific shareholders owning stock at the time of the company's combination with Santa Fe, in the event their amended complaints are dismissed for lack of standing.

## IV.

The amended complaints allege that jurisdiction is based upon 28 U.S.C. § 1337 (1982), which grants original jurisdiction to the federal courts in any action arising under the federal antitrust laws.

---

**5.** *See Basch v. Talley Industries, Inc.,* 53 F.R.D. 9, 11–12 (S.D.N.Y.1971); *Heit v. Tenneco, Inc.,* 319 F.Supp. 884, 886–88 (D.Del.1970); *Lewis v. Anderson,* 453 A.2d 474 (Del.Ch.1982), *aff'd,* 477 A.2d 1040 (Del.1984).

**6.** *See Abrams v. Occidental Petroleum Corp.,* 20 Fed.R.Serv.2d (Callaghan) 170 (S.D.N.Y.1975).

Since plaintiffs assert causes of action based solely upon violations of the Clayton Anti-Trust Act, it appears that for the reasons set forth in *Drachman v. Harvey*, 453 F.2d 722, 725–30 (2d Cir.1971), the question of derivative shareholder standing under Federal Rule of Civil Procedure 23.1 is controlled by federal law. *See also Orenstein v. Compusamp, Inc.*, 19 Fed.R. Serv.2d (Callaghan) 466, 467 (S.D.N.Y. 1974).[7] Plaintiffs seek to vindicate federally-created rights through derivative actions which were within the historic equity jurisdiction of the federal courts. *See Drachman v. Harvey, supra*, 453 F.2d at 728–29, *citing, Dodge v. Woolsey*, 59 U.S. (18 How.) 331, 15 L.Ed. 401 (1855); *Hawes v. City of Oakland*, 104 U.S. 450, 26 L.Ed. 827 (1882). It is appropriate for the federal courts to apply a uniform standard for determining shareholder standing in derivative suits founded upon federal claims. *See Drachman v. Harvey, supra*, 453 F.2d at 729; *Arnett v. Gerber Scientific, Inc.*, 566 F.Supp. 1270, 1272–73 (S.D.N.Y.1983). Accordingly, the issue to be resolved is how does federal law view the standing of shareholders who, through no action on their part, no longer own the stock of the corporation on whose behalf they sue?[8]

The application of the *Drachman* rule does not fully answer the question posed by defendants' motion. Defendants point out that in *Rothenberg v. United Brands Co.*, [1977–78 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 96,045 (S.D.N.Y.), *aff'd mem.*, 573 F.2d 1295 (2d Cir.1977), Judge Brieant found that a plaintiff who received cash for his stock from a tender offer lacked standing under Rule 23.1 to bring a shareholder derivative suit alleging violations of Section 16(b) of the Exchange Act. 15 U.S.C. § 78p(b) (1982). He noted that while Rule 23.1 does not specifically require a shareholder to retain his or her stock throughout the litigation, the requirement is implied, *id.* at 91,692, *quoting, Orenstein v. Compusamp, Inc., supra*, 19 Fed.R.Serv.2d at 468, because

> the shareholders will receive an indirect benefit (in terms of increased shareholder equity) from any corporate recovery, they are protecting their own interests as well as those of the corporation. Conversely, a non-shareholder, or one who loses his status as a shareholder during the course of the litigation, can gain no possible advantage, either directly or indirectly, from a corporate recovery. And this is so whether the corporate recovery is based upon [Section 16(b) ] ... or any other corporate claim capable of being enforced derivatively.

*Rothenberg v. United Brands, supra*, [1977–78 Transfer Binder] Fed.Sec.L.Rep. at 91,692. *Accord, Portnoy v. Kawecki Berylco Industries, Inc.*, 607 F.2d 765, 767 (7th Cir.1979); *Orenstein v. Compusamp, supra*, 19 Fed.R.Serv.2d at 468; *Werfel v. Kramarsky*, 61 F.R.D. 674, 679 (S.D.N.Y. 1974).

Plaintiffs make the serious point that these cases are distinguishable because the plaintiffs here retain their proprietary interest in Southern Pacific. They argue that the continuous ownership of stock rationale simply does not support a finding that they are without standing because even as SFSP shareholders, they are still in a position to benefit indirectly from a recovery against the defendants. "[A]n exchange of stock compelled by a merger can[not] be equated with the sale of stock discussed in" the cases cited above denying

---

**7.** While these cases were concerned with alleged violations of the federal securities laws, we see no reason to distinguish between a complaint based upon Clayton Act violations and one alleging violations of Section 10(b) of the Securities Exchange Act of 1934. 15 U.S.C. § 78j(b) (1982).

**8.** We note that the Delaware courts have definitively answered this question. In *Bonime v. Biaggini*, Nos. 6925 & 6980, slip op., (Del.Ch.

Dec. 7, 1984), the Court of Chancery denied standing to the plaintiffs in this action to continue their companion Delaware state court case on the ground that "where a plaintiff loses his status as a shareholder due to a merger which occurs after the suit is instituted he also loses his ability to maintain his derivative suit." *Id.*, slip op. at 5, *citing, Lewis v. Anderson, supra*, 477 A.2d 1040; *Dell v. Grimm*, No. 5784, slip op. (Del.Ch. July 17, 1979).

standing. *Abrams v. Occidental Petroleum Corp., supra,* 20 Fed.R.Serv.2d (Callaghan) at 172 (discussing Delaware and New York cases); *see also Schreiber v. Carney,* 447 A.2d 17, 22 (Del.Ch.1982) (making same distinction). Nevertheless, we are not convinced that the inapplicability of the distinguished decisions is enough reason to find that plaintiffs continue to have standing to pursue their claims.

While plaintiffs' arguments are not without merit, plaintiffs have not cited any cases which persuasively develop a rationale for finding continuing shareholder derivative standing following an exchange of shares.[9] On the other hand, the Delaware cases cited by defendants, although neither precisely on point nor controlling, contain a number of arguments which lead us to conclude that plaintiffs can no longer sue on behalf of Southern Pacific. In *Lewis v. Anderson, supra,* 453 A.2d 474, *aff'd,* 477 A.2d 1040, a derivative shareholder plaintiff was denied standing to continue his suit on behalf of Conoco, Inc. against the company's former managers, who allegedly arranged "golden parachute" employment agreements in anticipation of a takeover by outside interests, after the company merged into Du Pont Holdings, Inc., a wholly-owned subsidiary of E.I. Du Pont de Nemours and Company ("Du Pont"). Under the merger's terms, Conoco, Inc. ceased to exist, Du Pont Holdings acquired its assets and assumed the company's name (hereafter referred to as "New Conoco"), plaintiff's Conoco stock was exchanged for common stock of Du Pont, and Du Pont became the sole shareholder of New Conoco. *See id.,* 477 A.2d at 1042. Plaintiff did not challenge these terms, only the actions of Conoco's former management. *See id.*

In a decision upheld by the Delaware Supreme Court the Court of Chancery found that under Delaware law plaintiff no longer had standing to continue his cause of action following Conoco's merger with Du Pont because, *inter alia,*

.[T]he right to a pending cause of action is an asset of a merged corporation which passes to the corporation surviving the merger. Under the facts of this case, any right to equitable relief possessed by the original Conoco against the individual defendants, as its officers and directors, passed to Du Pont Holdings, and thus to the present Conoco, by virtue of the merger. Likewise, by the terms of the same merger, the plaintiff Lewis ceased to be a shareholder of Conoco—either new or old—and instead became a shareholder of Du Pont. The company of which the plaintiff is now a shareholder, Du Pont, now owns all of the stock of the present Conoco and, if the original Conoco had a claim for relief against its former officers and directors for the reasons set forth in the complaint in this action, that claim is now owned by the present Conoco. The shareholder beneficiary of such a claim is now Du Pont, and not the plaintiff Lewis and the other shareholders of the original Conoco as was the situation when the suit was filed.

Given this scenario brought about by the merger, what logical justification can there be for permitting the plaintiff Lewis, who is no longer a shareholder of the entity possessing the claim, to continue to prosecute the action on behalf of the new Conoco without regard to the feelings of its present 100 percent sharehold-

---

**9.** Although continued shareholder standing following such an exchange was found to exist in *Abrams v. Occidental Petroleum Corp., supra,* 20 Fed.R.Serv.2d 170, that decision was based in large part upon an interpretation of Delaware law recently disapproved of by the Supreme Court of Delaware in *Lewis v. Anderson, supra,* 477 A.2d at 1046, 1048 nn. 11 & 17 (Del.1984). *Arnett v. Gerber Scientific, Inc., supra,* 566 F.Supp. at 1273, a case in which shareholders were found to have standing following a merger because "(1) plaintiffs' disposition of stock was involuntary; (2) the disposition was related to allegedly illegal acts of defendants; and (3) the remedy sought [ (recission of the merger) ] would result in plaintiffs regaining their shareholder status" (footnote omitted), is distinguishable because factors (2) and (3) are not found here. Plaintiffs' argument, that they continue to have standing because the combination of Southern Pacific and Santa Fe was in reality a reorganization which did not affect their ownership of Southern Pacific is discussed *infra.*

er, Du Pont? Offhand, I can think of none.

*Id.,* 453 A.2d at 479, *quoted in, id.,* 477 A.2d at 1043.

Plaintiffs attempt to distinguish *Lewis* on the ground that Southern Pacific, unlike Conoco, survived as a corporation after its merger with Santa Fe. This distinction, however, is not of controlling significance. The facts here establish that although Southern Pacific was not merged out of existence, it now functions as a wholly-owned subsidiary of SFSP, with SFSP as its sole shareholder. Under such circumstances, the right to continue these suits has passed to SFSP under Delaware law and that company's board of directors should have the opportunity, in the first instance, to decide whether or not to take over the actions. *See generally Kaster v. Modification Systems, Inc.,* 731 F.2d 1014, 1017 (2d Cir.1984); *Lewis v. Graves,* 701 F.2d 245, 247–48 (2d Cir.1983). We believe that this view is supported by the underlying philosophy of Federal Rule of Civil Procedure 23.1, to give a company's board of directors first priority in deciding whether or not to pursue a cause of action.

Plaintiffs challenge the above rationale on the ground that the Southern Pacific-Santa Fe combination has little real meaning in this instance because it was, according to them, merely a nominal reorganization leading to the creation of a holding company which even the Delaware courts consider to be an exception to their rules of standing. *See Lewis v. Anderson, supra,* 477 A.2d at 1046 & n. 10; *Schreiber v. Carney, supra,* 447 A.2d 17, 21–22. In *Schreiber v. Carney,* the Chancery Court found that an exchange of shares leading to the creation of a holding company did not defeat a derivative plaintiff's standing to continue his action in part because the reorganization was a share for share merger and the structure of the old and new companies was "virtually identical." *Schreiber v. Carney, supra,* 477 A.2d at 22. In this case, by way of contrast, the SFSP board of directors consists not only of pre-merger directors from Southern Pacific but also from Santa Fe. We therefore find, as did the Delaware Chancery Court which considered the identical issue, that the Santa Fe-Southern Pacific combination was more than simply "window dressing" but was in fact a significant reorganization of the two companies. *See Bonime v. Biaggini, supra,* slip op. at 5–7; *see also Lewis v. Anderson, supra,* 477 A.2d at 1046 n. 10.

Plaintiffs' final argument is that there is little to be served by giving the SFSP board of directors an opportunity to prosecute this action because it is futile to expect them to authorize a derivative suit on behalf of the Southern Pacific Transportation Company. They point to the substantial influence which Southern Pacific's pre-merger directors exert on the SFSP board, the fact that the former president of SPTC is now the president and chief operating officer of SFSP and that one of the vice chairmen of SFSP is Southern Pacific's former president.

The parties have addressed the futility issue at least in part in their voluminous submissions relating to defendants' motion to dismiss for failure to make a demand upon Southern Pacific's directors. While we need not decide the question,[10] at first reading it appears far from obvious from the facts alleged in the amended complaints that a demand upon Southern Pacific's board of directors would have been futile. To the extent that this question influences a decision on the present motion, we take notice of the fact that Southern Pacific's board of directors remained relatively static between the time an earlier demand alleging violations of the Clayton Act was rejected in May of 1981 and the time the amended complaints were filed in September of 1983. *See* Amended Complaints, ¶¶ 25–32, *reprinted in,* Supplemental Affidavit, filed September 26, 1983, at Exhibits A & B. At the present time, however, it cannot be said that a demand upon the SFSP board of directors would

---

**10.** *See* note 3 *supra.*

necessarily be futile, given the change in the cast of players brought about by the consolidation of the Santa Fe and Southern Pacific boards. *See Kaster v. Modifications Systems, Inc., supra,* 731 F.2d at 1018 ("determination of the sufficiency of allegations of futility depends on the circumstances of the individual case and is within the discretion of the district court.").

Accordingly, we conclude that plaintiffs no longer have standing to continue their double-derivative suits on behalf of Southern Pacific because the right to prosecute this action has vested with SFSP, the sole Southern Pacific shareholder. This is not a situation in which plaintiffs are left high and dry without an ultimate remedy. If the SFSP board of directors refuses to pursue their claims after a demand is made upon it, it appears that plaintiffs could then take appropriate action. However, in any event, the rationale supporting Rule 23.1 strongly favors the proposition that the newly-constituted SFSP board should be given the opportunity to take a fresh look at the issues raised by plaintiffs and to decide whether or not it wishes to pursue the claims.

Defendants' motion to dismiss the amended complaints for lack of standing is granted subject to a short stay for the purpose of discussing at a conference to be held as soon as possible plaintiffs' letter requests that the suits be permitted to continue as class actions. The imposition of a stay does not indicate any position as to the merits of the plaintiffs' requests.[11] Defendants' motion to dismiss for plaintiffs' failure to make a demand upon the directors is denied as moot. Decision on plaintiffs' motion for summary judgment is reserved pending the outcome of the conference to be held with counsel.

It is so ordered.

---

11. In a letter dated December 18, 1984, plaintiffs argue, as we understand it, that we should take into account in determining whether they continue to have standing the larger public interest supporting enforcement of Section 10 of the Clayton Act. This issue is addressed in detail by plaintiffs in their summary judgment motion which defendants have not been obliged to answer. *See* note 2 *supra.* We do not believe that the merits of a complaint, however important, can establish the necessary standing to continue a cause of action. In any event, we note, while expressing no view on these matters, that it might be possible for plaintiffs to continue their actions in guise of a class action, as they request, a suit by the SFSP board of directors, or a suit against the SFSP board to secure relief if it refuses to act upon plaintiffs' demands.