Ethel FISCHER and Herbert
Bonime, Plaintiffs,

v.

CF & I STEEL CORPORATION, Thomas
M. Evans, Southern Pacific Company
and Southern Pacific Transportation
Company, Defendants.

Mary MAYER, Plaintiff,

v.

CF & I STEEL CORPORATION, Thomas
M. Evans, Southern Pacific Company
and Southern Pacific Transportation
Company, Defendants.

Nos. 82 Civ. 5424(MEL), 82
Civ. 6159(MEL).

United States District Court,
S.D. New York.

July 30, 1985.

Milberg, Weiss, Bershad, Specthrie & Lerach, and Lowey, Dannenburg & Knapp, and Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs; Richard M. Meyer, Henry T. Brachtl and Robert Skirnick, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants CF & I Steel Corp. and Thomas Evans; Edward N. Costikyan, Steven E. Landers, Anne Louis Oates and Steven Gey, New York City, of counsel.

LASKER, District Judge.

In an earlier opinion, plaintiffs were found to lack standing to pursue their shareholder derivative suit because the corporation on whose behalf they sued, Southern Pacific Company (hereinafter referred to as "Southern Pacific") had been merged out of existence to form Santa Fe Southern Pacific Corporation (hereinafter referred to as "SFSP"). *See Fischer v. CF & I Steel Corp.*, 599 F.Supp. 340 (S.D.N.Y.1984). Plaintiffs now move to amend their complaint to change the action from a shareholder derivative suit to a class action on behalf of individual SFSP shareholders who were originally Southern Pacific shareholders, and who allege personal injury as a result of the violation of Section 10 of the Clayton Act by defendants. For the reasons discussed below, plaintiffs' motion is granted.

## I.

Plaintiffs allege that defendants violated Section 10 of the Clayton Act by failing to employ competitive bidding procedures when Southern Pacific purchased over $71.5 million dollars of defendant CF & I Steel Corporation's (hereinafter referred to as "CF & I") products. Section 10 of the Clayton Act, 15 U.S.C. § 20 (1982), provides

that it is a violation of the antitrust laws for a common carrier, which has a director who holds a "substantial interest" in a vendor, to purchase over $50,000.00 of supplies from that vendor without competitive bidding. Defendant Thomas M. Evans was, at the time of the violation complained of, simultaneously a director of the parent company of CF & I and Southern Pacific and its wholly owned subsidiary Southern Pacific Transportation Company, a common carrier. Southern Pacific has since merged with Santa Fe Industries, Inc. to form SFSP, and all shareholders in the two companies have received stock in the new entity SFSP.

Plaintiffs now move for leave to amend the complaint to convert the suit into a class action on behalf of that class of SFSP shareholders who were originally shareholders in Southern Pacific. Plaintiffs contend that they were injured by the terms of the merger because their Southern Pacific stock was undervalued as a result of the depletion of Southern Pacific's assets, caused by overpayment to CF & I. Plaintiffs argue that such overpayment would have been avoided had defendants complied with the competitive bidding procedures established in Section 10 of the Clayton Act.

## II.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." However, it is defendants' contention that to allow amendment in this case would be futile, since the proposed amended complaint could not withstand a motion to dismiss, *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), and that the motion should therefore be denied.

Defendants assert that the proposed amended complaint fails to state a cause of action for two reasons. First, Southern Pacific's successor corporation, SFSP, is now the proper party to bring this suit and plaintiffs have no individual right in the corporate injury of Southern Pacific. Second, defendants argue that plaintiffs lack

standing to bring this action under the federal antitrust laws. Plaintiffs respond that when the corporation's existence was terminated by virtue of the merger, the right of the corporation to seek a remedy for the alleged antitrust violations became theirs, as the only parties who could and would sue. It follows, plaintiffs contend, that the proposed amended complaint is sufficient and viable, entitles them to relief, and is not futile.

■ The general rule of corporate law in this Circuit is that "where an injury is suffered by a corporation and the shareholders suffer solely through depreciation in the value of their stock, only the corporation itself, ... or a stockholder suing derivatively in the name of the corporation may maintain an action against the wrongdoer." *Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir.1975). Giving preference to the corporate entity's authority to recover on its own behalf, as opposed to the authority of its individual shareholders to recover for it, *see, e.g., Gordon v. Fundamental Investors, Inc.*, 362 F.Supp. 41, 45–46 (S.D.N.Y.1973), would ordinarily make it appropriate for SFSP, as successor to Southern Pacific, to bring this action. If it failed to do so on demand of a shareholder, the preference discussed in *Gordon, supra*, would permit a derivative suit by the SFSP shareholders. *See, e.g., Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).

Applying this method of recovery to these shareholders, however, presents a unique problem. Because the claim belonged originally to Southern Pacific, and its shareholders constitute only a portion of the current SFSP shareholders, any recovery by SFSP, whether directly or on a derivative basis, would lead to a windfall recovery by those SFSP shareholders who were not originally Southern Pacific shareholders. As this analysis indicates, the injury was not suffered by SFSP and its shareholders, but by Southern Pacific and its shareholders whose stock was allegedly undervalued by the acts complained of. Although SFSP now includes those Southern Pacific shareholders, it consists of other shareholders as well.

This peculiar set of facts requires special consideration both in applying the rule of *Vincel, supra*, and the factors listed by the Supreme Court for determination of antitrust standing in *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). One of these factors is the directness of the injury suffered by the plaintiff, another is whether there are more direct victims of the alleged violation who could appropriately sue. As discussed above, the former Southern Pacific shareholders are the most direct victims and there are none more directly injured. The depreciation in value of their stock was a direct result of the violation complained of. These factors, in conjunction with the discussion of the remaining factors listed in *Associated General, supra*, which is set out below, argue in favor of plaintiffs' standing.

In recognition of the impropriety of allowing a windfall recovery, the court in *Perlman v. Feldmann*, 219 F.2d 173, 178 (2d Cir.1955), allowed the injured shareholders the right to recover "in their own right, instead of in right of the corporation." Although it is true that in *Perlman* the court sought to prevent alleged malfactors rather than non-injured shareholders from recovering, the impropriety of granting windfall recoveries to non-injured shareholders of a post-merger corporation has also been recognized. *See Ashton v. Commons*, No. 813128 (Cal.Super.Ct. August 23, 1984).

Moreover, more than two years have passed since the Santa Fe Southern Pacific merger, during which SFSP has made no effort to prosecute the antitrust claim which originally belonged to Southern Pacific. As a result, precluding these plaintiffs from prosecuting would result in allowing the injury, if any, that Section 10 of the Clayton Act seeks to prevent, to remain unremedied. *Vincel v. White Motor Corp.*, 521 F.2d at 1120 ("To deny [plaintiff] the right to sue would have had the effect of

negating the protective features of the Act altogether." citing *Kavanaugh v. Ford Motor Co.*, 353 F.2d 710 (7th Cir.1965)).

In sum, to allow the individual plaintiffs to maintain this action in place of the post-merger corporation would avoid the problem of a windfall recovery to the non-injured shareholders while assuring that the purpose of Section 10 of the Clayton Act is fulfilled.

Defendants argue that, based on decisions which have applied the factors listed in *Associated General, supra,* (such as *Meyer Goldberg, Inc. v. Goldberg,* 717 F.2d 290 (6th Cir.1983); *Continental Ill. National Bank & Trust Co. v. Stanley,* 585 F.Supp. 1385 (N.D.Ill.1984)) plaintiffs fail to meet that test of standing because in these cases antitrust injury has not been held to confer standing to sue on individual shareholders. Relying on these cases for the proposition that individual shareholders do not have standing to sue in antitrust cases, defendants do not consider the application of each of the *Associated General* factors to the case at hand. They argue, rather, that the shareholder's injury is indirect since only suffered through the corporation, and that there is a risk of duplicative recovery and complex damage apportionment if shareholders are allowed to sue.

█ Our analysis of the factors listed in *Associated General* leads us to conclude that plaintiffs do have standing to maintain this action. The first factor requires an intentional and causal connection between the violation and the harm to plaintiff. The proposed amended complaint alleges an intentional causal connection between the antitrust violations and the antitrust injury, because, as is argued, the normal result of asset depletion is to reduce the value of the corporation's stock. The second factor, the nature of the plaintiff as consumer or competitor in the relevant market, applies only obliquely, if at all, to the special facts of this case. It is clear that the plaintiff shareholders do not sue either as consumers or competitors. On the other hand, the specific purpose of Section 10 of the Clayton Act is not to protect consumers or competitors, but rather to protect a carrier from financial injury due to possible misfeasance of common directors. *See Minneapolis & St. Louis Railway Co. v. U.S.,* 361 U.S. 173, 190, 80 S.Ct. 229, 239, 4 L.Ed.2d 223 (1959). The remaining factors, whether damages are speculative, and whether damages might require a complex apportionment, also favor plaintiffs standing to sue. In this case damages are anything but speculative, since the discrepancy, if any, between the market price and CF & I's price is a precise amount. There is no problem in apportioning damages pro rata among the former Southern Pacific shareholders. The other factors, relating to directness of injury and whether there was a more direct plaintiff, have already been discussed in connection with whether plaintiffs can assert the merged corporation's claim.

█ While we recognize that a shareholder normally lacks standing to bring a corporate claim or to initiate an antitrust action for harm to the corporation, *see, e.g., Kreager v. General Electric Co.,* 497 F.2d 468 (2d Cir.), *cert. denied,* 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974), the unique facts of this case render these shareholders the proper parties to sue for their corporation's injury.

For the reasons discussed above, plaintiffs' motion for leave to amend the complaint is granted.

It is so ordered.