See also 661 F.Supp. 62.

**Ethel FISCHER and Herbert Bonime, Plaintiffs,**

**v.**

**CF & I STEEL CORPORATION, Thomas M. Evans, Southern Pacific Company and Southern Pacific Transportation Company, Defendants.**

**Mary MAYER, Plaintiff,**

**v.**

**CF & I STEEL CORPORATION, Thomas M. Evans, Southern Pacific Company and Southern Pacific Transportation Company, Defendants.**

Nos. 82 Civ. 5424(MEL), 82 Civ. 6159(MEL).

United States District Court, S.D. New York.

March 12, 1990.

As Amended March 16 and March 20, 1990.

Lowey, Dannenberg, Bemporad, Brachtl & Selinger, P.C., Milberg Weiss Bershad Specthrie & Lerach, Wolf Popper Ross Wolf & Jones, New York City, for plaintiffs; Henry A. Brachtl, Robert P. Sugarman, Ellen P. Chapnick, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants CF & I Steel Corp. and Thomas M. Evans; Edward N. Costikyan, Steven E. Landers, Clifford J. Peterson, Patrick J. Burke, of counsel.

LASKER, District Judge.

CF & I Steel Corporation and Thomas M. Evans (collectively "CF & I") move for summary judgment against Ethel Fischer and Herbert Bonime, former shareholders of Southern Pacific Company ("Southern Pacific"). The complaint alleges that CF & I violated Section 10 of the Clayton Act, 15 U.S.C. § 20, when it sold more than $71.5 million in steel rail to Southern Pacific Transportation Company ("SPTC"), a wholly-owned subsidiary of Southern Pacific, without competitive bidding.

I.

Fisher and Bonime instituted this action in 1982 as a shareholder double-derivative suit on behalf of Southern Pacific and

SPTC. In December 1983 Southern Pacific and Santa Fe Industries, Inc. ("Santa Fe") merged to form Santa Fe Southern Pacific Corporation ("SFSP"), which was then the third largest railroad in the United States. As a result of the merger plaintiffs lost standing to sue derivatively, but were permitted to amend the complaint to pursue the suit as a class action.

The relevant facts are as follows. The principals involved in the merger negotiated an agreement that shareholders of Santa Fe would receive 54 percent and Southern Pacific shareholders would receive 46 percent of the shares of the new company, SFSP. This 54/46 split ("the SFSP stock division") resulted in an exchange ratio of 1.543 shares of SFSP stock for each share of Southern Pacific and 1.203 shares of SFSP for each share of Santa Fe. Plaintiffs' amended complaint asserts that Southern Pacific would have negotiated a more favorable exchange ratio for its shareholders had its assets not been previously depleted by the alleged Clayton Act violation [1]—the failure to seek formal competitive bidding for rail purchases which resulted in lost savings of more than $7 million. Defendants move for summary judgment on the grounds that the uncontroverted affidavits and deposition testimony of the four principals in the merger negotiations clearly establish that plaintiffs suffered no injury. Plaintiffs reply, relying solely on documentary evidence, that the SFSP stock division would have been affected by the alleged lost savings because Southern Pacific would have retained the savings and, accordingly, could have significantly increased its market value and the amount of assets it could contribute to the merger. Plaintiffs also argue that a prior decision is law of the case and establishes that material issues of fact remain.

## II.

■ The speculativeness of the alleged injury may limit a plaintiff's right to recover in an antitrust action. *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 542–43, 103 S.Ct. 897, 910–11, 74 L.Ed.2d 723 (1983). *See also, Volvo North America Corp. v. Men's Int'l Prof. Tennis Council*, 857 F.2d 55, 66 (2d Cir.1988). To defeat a motion for summary judgment in an antitrust action plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The trier of fact must be able to ascertain causal antitrust injury 'without engaging in speculation.'" *Catlin v. Washington Energy Co.*, 791 F.2d 1343, 1347 (9th Cir.1986). Where a plaintiff cannot show a genuine issue of material fact regarding whether the defendant's alleged antitrust violations caused plaintiff's asserted injury, courts have granted summary judgment dismissing the complaint. *See, e.g., Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42 (2d Cir.1986), *cert. denied* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987).

■ Defendants contend that, even assuming that the entire $71.5 million which Southern Pacific's subsidiary spent in purchasing rail from CF & I could have been saved as assets of the company until the time of the merger negotiations, this amount would have had no effect on the SFSP stock division calculations, and, accordingly, plaintiffs suffered no injury.

**1.** Section 10 of the Clayton Act, 15 U.S.C. § 20, states in relevant part:

No common carrier engaged in commerce shall have any dealings in securities, supplies, or other articles of commerce ... to the amount of more than $50,000, in the aggregate, in any one year, with another corporation, firm, partnership, or association when the said common carrier shall have upon its board of directors ... any person who is at the same time a director, manager, or purchasing or selling officer of, or who has any substantial interest in, such other corporation, firm, partnership, or association, unless and except such purchases shall be made from ... the bidder whose bid is the most favorable to such common carrier, to be ascertained by competitive bidding....

During the relevant period Evans was a director of both Southern Pacific and SPTC (the common carrier purchasing more than $50,000 in steel rail), and Chairman of the Board, Chief Executive Officer and a 10% shareholder of Crane Co., which owned 96 percent of CF & I (the selling firm).

Defendants have submitted affidavits from the four individuals who were most involved in the negotiations, the chief executive officers of Southern Pacific and Santa Fe who personally negotiated the merger and SFSP stock division, and their financial advisers. All four affirmatively state that in this transaction involving the merger of two companies, each of which had a net worth of several billion dollars, even an additional $71.5 million in Southern Pacific's assets would not have changed the SFSP stock division. Taken together, the uncontroverted affidavits and the detailed deposition testimony of the affiants who actually negotiated the SFSP stock division provide compelling and persuasive evidence in support of defendants' position.

Benjamin F. Biaggini, the principal negotiator for Southern Pacific, who was Chairman and Chief Executive Officer of the company at the time of the merger, stated that the SFSP stock division "was not derived from any mechanically applied formula ... [but rather] through vigorous, arms-length bargaining."[2] Biaggini's statement is not only uncontradicted but is corroborated by his counterpart in the merger, John J. Schmidt, Chairman of the Board and Chief Executive Officer of Santa Fe at the time of the negotiations, who declared:

[E]ven if all or a substantial portion of $71.5 million had been added to Southern Pacific's assets at the time of the merger, this would not have affected, in any way, the percentage interest in SFSP that Southern Pacific received, nor the exchange ratio. This amount of money would have been too small to be of any significance in the negotiations between these two multi-billion dollar companies. The fact is that negotiations were simply not predicated on such (in this context) relatively fine points.[3]

Neither Schmidt nor Biaggini is currently an officer of SFSP and neither has any stake in this litigation.[4] Their depositions also make clear that they alone negotiated the final SFSP stock division. They started from Schmidt's proposed 60/40 division and moved quickly down to 54/46. Biaggini described the crucial final stages of the negotiations:

And then finally Schmidt and I stepped into another room.... And John reiterated his 45 percent offer. And I was, I was still at 50. And I said, John, I think we've got to do this thing, so I'll come down to 47½. And he said, 46 is as high as I'm going to go. And I looked at him and he looked at me and [I] decided that 46 was as high as he was going to go.[5]

Joseph G. Fogg III, a managing director of Morgan Stanley & Co. ("Morgan Stanley") and an adviser to Southern Pacific at the time of the merger, corroborated Biaggini's testimony that Santa Fe would not have agreed to give Southern Pacific more than 46 percent of the stock in the new company. Fogg testified:

We wouldn't have cut this deal, in my opinion, at that point in time on any other ratio. That was the—I've been involved in hundreds of merger negotiations in my career. I've been in a lot of tough negotiations. And there comes a time to do a deal, and the moment comes and the moment passes.

This was a weekend in Chicago. Things came together relatively quickly. The two principals who had been thinking about doing this deal on and off for years had finally reached a meeting of minds. Their financial advisors had done an enormous amount of background work. We were all convinced that put-

**2.** Defendants' Notice Of Motion For Summary Judgment (Jan. 13, 1989), Affidavit of Benjamin F. Biaggini ("Biaggini Affidavit") (Dec. 28, 1988) at ¶ 4.

**3.** Defendants' Notice Of Motion For Summary Judgment (Jan. 13, 1989), Affidavit of John J. Schmidt (Jan. 6, 1989) at ¶ 7.

**4.** Biaggini was a named defendant in the original shareholders' derivative litigation brought

on behalf of Southern Pacific. That action was dismissed for plaintiffs' lack of standing. *Fischer v. CF & I Steel Corp.*, 599 F.Supp. 340 (S.D.N.Y.1984).

**5.** Appendix to Plaintiffs' Memorandum In Opposition To Defendant's Motion For Summary Judgment, Exhibit 4, Transcript of Deposition Testimony of Benjamin F. Biaggini, dated June 27, 1989, at 47.

ting these two companies together made a great deal of sense for both sets of shareholders....

We were far apart on the asset valuations and in the context of all the other things that we were looking at, and they were looking at, we reached a deal.[6]

From the fast-paced context of the final one-on-one negotiation described above, the argument is compelling that a relatively modest potential increase of $71.5 million in Southern Pacific's actual assets would not have affected the SFSP stock division in a transaction involving assets valued at more than ten billion dollars.

### A. Asset Contribution

Against this strong evidence, plaintiffs offer no contradictory evidence but merely assert that a genuine issue of material fact exists as to whether the alleged savings on rail purchased through competitive bidding would have significantly increased the percentage asset contribution which Southern Pacific could have contributed to the merger, thereby affecting the SFSP stock division. The complaint alleges that a significant factor in the merger was the differential between the evaluations offered by Santa Fe and Southern Pacific as to the amount of assets each party to the merger would be able to contribute. Southern Pacific believed that it would contribute assets worth between $4.415 and $3.859 billion; Santa Fe estimated Southern Pacific's assets to be worth between $3.162 and $3.102 billion.[7] The difference in the respective high and low evaluations of Southern Pacific's assets ranged from $1.253 billion to $757 million. Southern Pacific calculated the average of the different valuations of the two companies submitted by their respective financial advisors, Morgan Stanley and Salomon Brothers, and determined that the average asset contributions to the merger would be 54.97 percent for

Santa Fe and 45.03 percent for Southern Pacific.[8] However, CF & I argues persuasively that even if an additional $71.5 million in Southern Pacific assets had been included in such calculations, the average asset contribution of Southern Pacific would have been only 45.48 percent, an increase of .45 percent compared to the original figure but still less than the 46 percent of SFSP stock which it received under the terms of the merger.[9]

More importantly, the evidence clearly shows that relative asset contribution was simply not a significant factor at the final stages of the negotiations, when Biaggini and Schmidt agreed upon the SFSP stock division of 54/46. Asset valuation was merely one of several factors in the initial stages of the negotiations. The wide disparity in the merger parties' evaluations of their respective asset contributions decreased the significance of this factor and made it almost irrelevant in the final analysis.

Moreover, plaintiffs' asset valuation argument rests on the premise that the potential savings which would have resulted from competitive bidding would have remained in the company as assets up until the time of the merger. However, the only evidence on this point is to the contrary. As Biaggini stated:

> It is highly unlikely that any material purchases savings would have found their way into corporate treasury as unallocated funds available for taxes, corporate expenses or dividends. To assume that they would have been readily available or in identifiable form is pure speculation.

Biaggini Affidavit at ¶ 10. Plaintiffs do not refer to any evidence to establish that their theory of injury—that the alleged savings would have been retained and would

---

6. Appendix to Plaintiffs' Memorandum In Opposition To Defendant's Motion For Summary Judgment, Exhibit 1, Transcript of Deposition Testimony of Joseph G. Fogg III, dated April 25, 1989, at 63–66.

7. Defendants' Notice Of Motion For Summary Judgment (Jan. 13, 1989), Affidavit of Roger W. Miller ("Miller Affidavit") (Nov. 28, 1988), Ex-

hibit A, Santa Fe Industries, Inc. Presentation to the Board of Directors, dated October 4, 1983, at 12.

8. *Id.*

9. Miller Affidavit at ¶ 7.

have affected the merger negotiations—is more than speculation. Indeed, plaintiffs have not offered any testimony or evidence to contradict the persuasive affidavits and deposition testimony of Schmidt, Biaggini, Fogg, and Roger W. Miller, chief financial advisor to Santa Fe during the negotiations, all of whom state that even if the alleged savings had been retained in SPTC as assets, those savings would not have affected the final result of the negotiations.

### B. *Plaintiffs' Documentary Evidence*

In support of their contention that the saving which they allege would have occurred if competitive bidding had taken place would have been material to the negotiations, plaintiffs rely on an undated memorandum prepared for Schmidt by T.J. Booth, a financial analyst at Santa Fe during the merger negotiations. The memorandum states in relevant part:

> Last, but not least, SP continues to effectively [manage] its assets to maintain an attractive cash position. Key "non-business" action was raising $72 [million] in cash through the sale of tax benefits in 1981 and another $12 million in 1st quarter, 1982.... Corporately, cash in 1981 increased by $53 million to $279 [million].[10]

Plaintiffs contend that because this memorandum found cash increases of $72 million and $53 million to be significant, an additional $71.5 million in Southern Pacific's assets would have been deemed material to the merger negotiations. However, in reference to this memorandum, Schmidt testified that "I didn't really think in these terms with respect to the merger."[11]

Plaintiffs also argue that $71.5 million is significant when compared to smaller figures connected to capital projects which had been highlighted in the two companies' annual reports. However, the fact that certain annual reports mentioned projects involving expenditures of less than $71.5 million is not significant in relation to the question whether an additional $71.5 million would have affected the SFSP stock division. In sum, plaintiffs rely solely on fragmentary documentary evidence which does not contradict the persuasive deposition testimony of defendants' four witnesses, two of whom personally negotiated the SFSP stock division between Santa Fe and Southern Pacific.

### C. *Market Value*

Plaintiffs also contend that the alleged savings which they claim would have resulted from competitive bids for the rail purchased by Southern Pacific would have positively affected the company's pre-merger market value, a factor which defendants concede was significant in the negotiations. However, the complaint's allegations to that effect were already public knowledge and known to the market at the time of the merger negotiations. It is therefore reasonable to assume that plaintiff's claims had already been considered and discounted by the market when the merger occurred, and it is even possible to argue that the market value of Southern Pacific might have been increased at the time by the anticipation that this shareholder suit would succeed. *See Seaboard World Airlines, Inc. v. Tiger Int'l, Inc.*, 600 F.2d 355, 361–62 (2d Cir.1979) ("in a free and actively traded market, absent compelling reasons to believe otherwise, the market price is held to take account of asset value as well as the other economic, political and financial factors that determine 'value'"); *Matter of New York, N.H. & H.R. Co.*, 632 F.2d 955, 962 (2d Cir.) *cert. denied*, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980); *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1264 (S.D.N.Y. 1984) (describing efficient market as "translat[ing] all available [public] information concerning a security into a price").

---

**10.** Affirmation of Henry A. Brachtl In Opposition To Defendants' Motion For Summary Judgment (Sep. 19, 1989), Exhibit 5, Memorandum of T.J. Booth to John J. Schmidt regarding "Lines of Business Analysis/Southern Pacific Company," undated, at ¶ 9.

**11.** Appendix to Plaintiffs' Memorandum In Opposition To Defendants' Motion For Summary Judgment, Exhibit 3, Transcript of Deposition Testimony of John J. Schmidt, dated June 14, 1989, at 56.

In sum, plaintiffs' theory of potentially enhanced market value is, at best, highly speculative.

#### D. *Law Of The Case*

Finally, plaintiffs' argument that a previous decision in this action is law of the case is meritless. The prior decision merely denied plaintiff's motion on the pleadings, made prior to any discovery. *Fischer v. C.F. & I. Steel Corp.*, 657 F.Supp. 1195, 1203 (S.D.N.Y.1987). Now that discovery has taken place summary judgment on the evidence is appropriate.

\* \* \* \* \* \*

For the reasons discussed above, defendants' motion for summary judgment is granted and the complaint is dismissed against all defendants.

It is so ordered.